# JACKSONWHITE
## ATTORNEYS AT LAW
### A Professional Corporation

40 North Center Street, Suite 200
Mesa, Arizona   85201
Telephone No.:       (480) 464-1111
Facsimile No.:       (480) 464-5692
Email:       centraldocket@jacksonwhitelaw.com
*Attorneys for Plaintiff*
By:    Nathaniel J. Hill, No. 028151
        Email:        nhill@jacksonwhitelaw.com

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Diana J. Croteau, a single woman,<br><br>                 Plaintiff,<br><br>v.<br><br>Williams-Grand Canyon News; Navajo-Hopi Observer; Western News&Info, Inc., an Arizona corporation; and Williams GC Newspapers, Inc., an Arizona corporation,<br><br>                 Defendants. | Case No.:  CV_____<br><br>**COMPLAINT**<br><br>(Violation of the Family and Medical Leave Act)<br><br>(*Jury Trial Requested*) |

Plaintiff, Diana J. Croteau, by and through her counsel undersigned, and for her Complaint, alleges as follows:

### I.        NATURE OF CLAIM

1.        This is a proceeding for damages against Defendants to redress the deprivation of rights secured to Plaintiff by the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq*.

/ / /

## II.    JURISDICTION

2.    The events giving rise to these causes of action occurred in Yavapai and Coconino Counties, Arizona within the jurisdiction of this Court.

3.    The jurisdiction of this Court is invoked pursuant to 29 U.S.C. §§ 1331 and 1367(a) and pursuant to 29 U.S.C. § 2601, *et seq*. and the FMLA.

## III.    VENUE

4.    Based on 28 U.S.C. § 1391 and the FMLA, venue is proper because the acts detailed in this Complaint occurred within the State of Arizona and the jurisdiction of this Court.

## IV.    PARTIES

5.    Plaintiff Diana J. Croteau is a single woman who was at all times relevant to this action a resident of Coconino County, Arizona.

6.    Defendant Williams-Grand Canyon News (hereinafter "WGC News") is an Arizona company doing business in Yavapai and Coconino Counties, Arizona.  WGC News is owned by Williams GC Newspapers, Inc., an Arizona corporation doing business in Yavapai and Coconino Counties, Arizona.

7.    Defendant Navajo-Hopi Observer (hereinafter "Navajo-Hopi Observer") is an Arizona company doing business in Yavapai and Coconino Counties, Arizona.  The Navajo-Hopi Observer is owned by Williams GC Newspapers, Inc., an Arizona corporation doing business in Yavapai and Coconino Counties, Arizona.

8.    Defendant Western News&Info, Inc. (hereinafter "WNI") is an Arizona corporation doing business in Yavapai and Coconino Counties, Arizona.

9.    Defendant Williams GC Newspapers, Inc. (hereinafter "WGC Newspapers") is an Arizona corporation doing business in Yavapai and Coconino Counties, Arizona.

10.    At all material times hereto, Plaintiff was an employee of WGC News within the definition of 29 U.S.C. § 2601, *et seq.* of the Family and Medical Leave Act

("FMLA").   Plaintiff was employed by WGC News for more than one year and had worked more than 1,250 hours for each year of her employment.

11.     At all times relevant to this action, WGC News was an employer as defined in 29 U.S.C. § 2601, *et seq*. of the FMLA and employed more than 50 employees within a 75 mile radius of the location where Plaintiff worked.

12.     At all material times hereto, Plaintiff was an employee of the Navajo-Hopi Observer within the definition of 29 U.S.C. § 2601, *et seq.* of the FMLA.   Plaintiff was employed by the Navajo-Hopi Observer for more than one year and had worked more than 1,250 hours for each year of her employment.

13.     At all times relevant to this action, the Navajo-Hopi Observer was an employer as defined in 29 U.S.C. § 2601, *et seq*. of the FMLA and employed more than 50 employees within a 75 mile radius of the location where Plaintiff worked.

14.     At all material times hereto, Plaintiff was an employee of WNI within the definition of 29 U.S.C. § 2601, *et seq.* of the FMLA.   Plaintiff was employed by WNI for more than one year and had worked more than 1,250 hours for each year of her employment.

15.     At all times relevant to this action, WNI was an employer as defined in 29 U.S.C. § 2601, *et seq*. of the FMLA and employed more than 50 employees within a 75 mile radius of the location where Plaintiff worked.

16.     At all material times hereto, Plaintiff was an employee of WGC Newspapers within the definition of 29 U.S.C. § 2601, *et seq.* of the FMLA.   Plaintiff was employed by WGC Newspapers for more than one year and had worked more than 1,250 hours for each year of her employment.

17.     At all times relevant to this action, WGC Newspapers was an employer as defined in 29 U.S.C. § 2601, *et seq*. of the FMLA and employed more than 50 employees within a 75 mile radius of the location where Plaintiff worked.

18.     At all material times hereto, Plaintiff was an employee of WGC News within the definition of 42 U.S.C. § 12111(4) of the Americans with Disabilities Act ("ADA"),

as amended, the Americans with Disabilities Act Amendments Act ("ADAAA"), and state law.

19.     At all times relevant to this action, WGC News was an employer as defined in 42 U.S.C. § 12111(5) of the ADA, and state law.

20.     At all material times hereto, Plaintiff was an employee of the Navajo-Hopi Observer within the definition of 42 U.S.C. § 12111(4) of the ADA, as amended, the ADAAA, and state law.

21.     At all times relevant to this action, the Navajo-Hopi Observer was an employer as defined in 42 U.S.C. § 12111(5) of the ADA, and state law.

22.     At all material times hereto, Plaintiff was an employee of WNI within the definition of 42 U.S.C. § 12111(4) of the ADA, as amended, the ADAAA, and state law.

23.     At all times relevant to this action, WNI was an employer as defined in 42 U.S.C. § 12111(5) of the ADA, and state law.

24.     At all material times hereto, Plaintiff was an employee of WGC Newspapers within the definition of 42 U.S.C. § 12111(4) of the ADA, as amended, the Americans with Disabilities Act Amendments Act ("ADAAA"), and state law.

25.     At all times relevant to this action, WGC Newspapers was an employer as defined in 42 U.S.C. § 12111(5) of the ADA, and state law.

26.     At all times relevant to this action, WGC News, the Navajo-Hopi Observer, WNI, and WGC Newspapers were all either employers or joint employers of Plaintiff.

27.     These foregoing entities were integrated employers with an interrelation of operations in Yavapai and Coconino Counties, with common officers, management, equipment, financial resources, centralized control of personnel, common ownership, and financial control.

28.     The events giving rise to these causes of action occurred in Yavapai and Coconino Counties, Arizona within the jurisdiction of this court.

29.     This court has subject matter jurisdiction over Plaintiff's claims.

/ / /

-4-

## BACKGROUND FACTS

**I.    Plaintiff's employment with WGC News, the Navajo-Hopi Observer, WNI, and WGC Newspapers.**

30.    Plaintiff began working for WGC News, the Navajo-Hopi Observer, WNI, and WGC Newspapers on October 26, 2015 as an account executive in the advertising department.

31.    Plaintiff worked full-time for WGC News, the Navajo-Hopi Observer, WNI, and WGC Newspapers, generally from 8:00 a.m. to 5:00 p.m., Monday through Friday, and some Saturdays.  At the time of her termination on February 24, 2017, Plaintiff was earning a base hourly wage, plus commissions.  Plaintiff also had benefits at WGC News, the Navajo-Hopi Observer, WNI, and WGC Newspapers.

32.    As an account executive in the advertising department, Plaintiff worked in a typical office setting and also performed outside sales.  Her job duties included, but were not limited to, developing and selling services and creating advertising in the Navajo-Hopi Observer and WGC News within an assigned geographic territory.

33.    Plaintiff was responsible for selling weekly ads for the Navajo-Hopi Observer (along with another individual), the Williams News (along with another individual), the Grand Canyon News (along with another individual), ads for the semi-annual Tourist Guide for the Grand Canyon, the semi-annual Tourist Guide for Williams (along with another individual), the Navajo-Hopi Observer monthly Sig Pages, the annual Discovery Map, the monthly Flagstaff Rewards, and selling web pages for the Navajo-Hopi Observer and the Williams News (along with another individual).  Additionally, she was responsible for filling Flagstaff Rewards racks in the Flagstaff area every month, sending invoices and tear sheets to advertisers, collecting payment from advertisers, and functioning as back-up for the Advertising Manager whenever the Advertising Manager was not in the office, which occurred several times in 2016.

34.     Plaintiff's assigned territory was Seligman, Ash Fork, Parks, Grand Canyon, West Flagstaff, and Winslow, Arizona.  Plaintiff also had a few advertisers in Williams, Arizona.

35.     Plaintiff customarily spent several partial or full days per week traveling to the businesses of potential advertisers within her assigned geographic territory.  She also contacted some potential advertisers by telephone within her assigned territory.

36.     Plaintiff has over 14 years of experience in the sales industry and working with businesses in Northern Arizona.

37.     Plaintiff was fully qualified for her position as an account executive in advertising.

38.     Prior to the incidents that give rise to this litigation, Plaintiff's work performance was always at least satisfactory.  In fact, in February 2016, at WNI's yearly seminar, Plaintiff received an award for an ad she had designed in 2015 during her first two months of employment at WGC News, the Navajo-Hopi Observer, WNI, and WGC Newspapers.  Additionally, in February 2017, Plaintiff received First Place for Best Color Ad for one of her ads.  Plaintiff never received any verbal or written warnings regarding her job performance prior to her termination on February 24, 2017.

II.     **Plaintiff takes FMLA leave for a serious medical condition.**

39.     Beginning in or around June 2016, Plaintiff began suffering a back condition, which caused her pain in her back.

40.     On or around August 30, 2016, Plaintiff consulted with an orthopaedic/spine physician regarding her back condition.  Several weeks later, on or around September 22, 2016, Plaintiff learned she needed back surgery.  Later, the surgery was scheduled for October 17, 2016.  At the time the surgery was scheduled, in or around the first of October 2016, Plaintiff notified Madeline Keith, acting CEO/Publisher, about her scheduled surgery.

41.     Shortly after Plaintiff notified Ms. Keith of her need for surgery, Ms. Keith provided Plaintiff with a Certification of Health Care Provider for Employee's Serious

Health Condition (Family and Medical Leave Act) (hereinafter "Certification") form to be filled out by her doctor and returned to WGC News, the Navajo-Hopi Observer, WNI, and WGC Newspapers requesting FMLA leave beginning on October 17, 2017.

42.     Plaintiff's physician/surgeon filled out the Certification form, and returned it to WGC News, the Navajo-Hopi Observer, WNI, and WGC Newspapers.  Her physician estimated that Plaintiff needed six weeks off of work beginning October 17, 2016. Additionally, Plaintiff's physician listed the following job functions Plaintiff would be unable to perform post operatively:  no bending, lifting, twisting, carrying over 10 lbs., sitting over 45 min.  He also stated, "Work status, Post op PT & recovery status are based on progress and serial x-ray for bone growth that will start at 6 wks. post-op."

43.     Upon information and belief, Plaintiff was approved to take job-protected FMLA leave beginning October 17, 2016.

44.     On or around November 29, 2016, Plaintiff's doctor released her to return to work on December 5, 2016 working part-time only, four hours per day, three days per week (Monday, Wednesday, and Friday), from December 5, 2016 to the date of her next appointment on January 17, 2017, with the following restrictions:  lifting/carrying and pushing/pulling of 10 lbs., reaching above the shoulder occasionally, no stooping/bending at the waist, standing/walking occasionally, no kneeling/squatting, no climbing, and driving (while at work) occasionally.

45.     Plaintiff returned to work at WGC News, the Navajo-Hopi Observer, WNI, and WGC Newspapers on December 5, 2016 part-time, working four hours per day, three days per week, in her account executive position.

46.     Between October 17, 2016 and December 5, 2016, while she was off of work on FMLA leave, Plaintiff, with Ms. Keith's knowledge, followed-up with advertisers for the Discovery Map.

47.     At the time she returned to work on December 5, 2016, Plaintiff gave Ms. Keith her doctor's note dated November 29, 2016.

48.     Shortly after Plaintiff returned to work on December 5, 2016, Ms. Keith provided Ms. Croteau with another Certification form to be filled out by her doctor and returned to WGC News, the Navajo-Hopi Observer, WNI, and WGC Newspapers. Plaintiff's physician/surgeon filled out the Certification form, and returned it to WGC News, the Navajo-Hopi Observer, WNI, and WGC Newspapers.

**III.    WGC News, the Navajo-Hopi Observer, WNI, and WGC Newspapers failed to engage in the interactive process with Plaintiff.**

49.     Between December 5, 2016 and February 24, 2017, WGC News, the Navajo-Hopi Observer, WNI, and WGC Newspapers did not initiate or engage in an interactive process with Plaintiff to determine whether she could continue to work with or without a reasonable accommodation.

50.     Sometime between December 5, 2016 and January 17, 2017, Plaintiff asked Ms. Keith, as an accommodation, to be allowed to make cold sales calls for advertisements by telephone instead of in person due to her inability, and her doctor's restriction, to drive long distances every day.  This was not a hardship for Defendants.  Many of Plaintiff's job duties, including cold calls to potential advertisers, were able to be accomplished by telephone.

51.     Ms. Keith responded to Plaintiff's request for an accommodation that Plaintiff needed to find a way to travel to businesses for cold sales calls.  At the time, Plaintiff had a retired friend who was staying with her and helping her during her recuperation and recovery from surgery.  This included driving Plaintiff to and from doctor's and other appointments, and following her return to work, driving her to and from work and to make cold sales calls.

52.     Although Plaintiff worked fewer hours upon her return to work on December 5, 2016, she continued performing all of the essential functions of her position with WGC News, the Navajo-Hopi Observer, WNI, and WGC Newspapers at the same level she had prior to her surgery and FMLA leave.  Plaintiff's sales were at least the same or better than prior to her back surgery on October 17, 2016.

53.     On January 17, 2017, Plaintiff began seeing a new physician due to the retirement of her previous physician.  Prior to the appointment, Plaintiff requested and obtained from Ms. Keith a copy of her job description for her doctor's review.

54.     At this January 17, 2017 appointment, Plaintiff's new physician prescribed that she begin physical therapy two times per week for six weeks.  Additionally, he increased the number of hours Plaintiff was allowed to work from four hours per day, three days per week, to six hours per day, three days per week, and restricted her driving distance.  The January 17, 2017 doctor's note states:

> **Work Status:**
>
> Regular Job with Temporary Limitations:  4 weeks:  6 hrs per day M/W/F.
> No Driving for over 45 minutes.
>
> **Date Of Next Scheduled Appointment:**  2 months

Plaintiff provided a copy of her doctor's physical therapy order, as well as a copy of his note, to Ms. Keith the following day.

55.     WGC News, the Navajo-Hopi Observer, WNI, and WGC Newspapers did not inform Plaintiff that it believed she was unable to perform her essential job functions.

**IV.     Plaintiff is subjected to a change in her job requirements and in her wages.**

56.     On Friday, February 3, 2017, Plaintiff met with Ms. Keith.  During this meeting, Ms. Keith presented Plaintiff with a new job description, which changed the essential requirements of Plaintiff's account executive position.  The changes to the job description, which allegedly took effect in November 2016, while Plaintiff was on approved FMLA leave recuperating from back surgery, and after Plaintiff's physician/surgeon filled out the Certification form listing the job functions Plaintiff would be unable to perform post operatively, included, but were not limited to, a new section entitled "Physical Demands," which stated:

> The physical demands of the job may include bending, sitting, standing, lifting, climbing and driving.  (Fill in if there are other demands);
> 1.     Physical demands are typical of an office environment.
> 2.     Must be able to lift up to 25 lbs.
> 3.     Must be able to sit in vehicles for long durations.

57.     The new "physical demands" described in the new job description essentially mirrored Plaintiff's doctor's restrictions.

58.     The new "physical demands" were an obvious effort by WGC News, the Navajo-Hopi Observer, WNI, and WGC Newspapers to remove Plaintiff from her position in violation of the FMLA and ADA.

59.     During this February 3, 2017 meeting, Ms. Keith requested that Plaintiff sign the new job description.  However, Plaintiff refused because (1) the new physical requirements were not the physical requirements at the time of her hire, nor were they in the original job description she signed on October 26, 2015; (2) they mirrored her physical limitations; and (3) they ignored her doctor's restrictions.  Moreover, these new restrictions were not actually essential to the job duties to be performed.

60.     Ms. Keith told Plaintiff that she (Plaintiff) had previously come into the office in November 2016, while she was on approved FMLA leave, for the purpose of signing the new job description and that she (Ms. Keith) needed Plaintiff to re-sign the new job description to put in Plaintiff's personnel file.  Plaintiff denied coming into the office and signing the document in November 2016 and asked Ms. Keith why Ms. Keith did not have the alleged originally signed job description or a copy.  Ms. Keith claimed that the originally signed job description must be in Plaintiff's personnel file in WGC News, the Navajo-Hopi Observer, WNI, and WGC Newspapers' Human Resources office in Prescott.  Plaintiff asked Ms. Keith to obtain for her from the Human Resources office, a copy of her allegedly signed job description.  Ms. Keith agreed to obtain a copy. However, she never did.

61.     Also during this February 3, 2017 meeting, because Plaintiff 1) was still recuperating, 2) needed time off of work to attend doctor's appointments and physical therapy, 3) had not yet been released by her doctor to return to work full-time, and 4) had not yet used all of her job-protected twelve work weeks of FMLA leave, Plaintiff asked Ms. Keith for another Certification form to give her doctor to fill out.

62.     Ms. Keith responded to Plaintiff's request for another Certification form that Plaintiff was out of FMLA leave and there was no need for her doctor to fill out another Certification.

63.     Plaintiff told Ms. Keith that she had spoken with someone at the Industrial Commission of Arizona, regarding FMLA leave, who advised her that after her return to work, hours she worked and any paid holidays should not be charged against her use of FMLA leave hours, and that she believed she still had FMLA leave time available. Plaintiff also advised Ms. Keith that it was her and/or WGC News, the Navajo-Hopi Observer, WNI, and WGC Newspapers' responsibility to provide her (Plaintiff) with a new Certification form to be filled out by her doctor.  Ms. Keith refused to provide Plaintiff with a new Certification form and continued to insist that Plaintiff's twelve weeks of FMLA leave had ended on January 17, 2017.

64.     Following Plaintiff's return to work on December 5, 2016, WGC News, the Navajo-Hopi Observer, WNI, and WGC Newspapers used one week increments to account for Plaintiff's intermittent FMLA leave instead of using one-half (1/2) week increments from December 5, 2016 to January 17, 2017 and one hour increments from January 17, 2017 to February 24, 2017.

65.     Ms. Keith again met with Plaintiff on Monday, February 6, 2017 and again asked Plaintiff to sign the new job description.  Ms. Keith still did not have a copy of the November 2016 job description allegedly signed by Plaintiff.  Therefore, Plaintiff again refused to sign the job description and told Ms. Keith that she felt Ms. Keith was targeting her due to her back condition/disabilities.

66.     Additionally, during this February 6, 2017 meeting, Ms. Keith asked Plaintiff to sign a document changing her commissions.  Plaintiff also refused to sign this document.

67.     Similarly situated employees who had not used job-protected FMLA leave, and/or were not disabled or regarded as disabled, were not similarly treated as Plaintiff and had their commissions changed.

**V.    Plaintiff's termination.**

68.    On Wednesday, February 8, 2017, Plaintiff received an email from Ms. Keith, which stated:

> Just a reminder that your doctor's note dated 01/17/17 listing temporary limitations and part time hours will end on February 13th, we will be excepting [sic] that you will be working full time Tuesday, February 14[th]. Please remember to bring a doctor's note releasing you with no restrictions.

69.    Following receipt of this email, Plaintiff contacted her physician's office and spoke with his assistant regarding obtaining a new doctor's note.  Plaintiff was told by the assistant that she (the assistant) needed to speak to the doctor.  On Monday, February 13, 2017, Plaintiff responded to Ms. Keith's February 8, 2017 email, stating:

> I called the doctor's office last Thursday [and] spoke with [his] assistant to see about a new doctor's note.  [I] [w]as advised she will have to speak with the doctor.  [I] [s]poke with the doctor[']s assistant again on Friday and she was not going to be able to speak with the doctor till today[,] Monday, February 13th.  [I] [h]ave called her twice today [and] left messages, however I just found out she is not in the office till tomorrow.
>
> I will not have a change to my doctor's note today.  [I'm] [n]ot sure what you want me to do about this?

70.    Ms. Keith responded to Plaintiff's email stating:

> Since your last doctor's note said you would only need to be on limited duty until Monday, February 13th, we will expect you back to full time tomorrow.  Please keep working on the doctor's note.

71.    Plaintiff replied to Ms. Keith's email stating:

> I just spoke with the doctor[']s office again[.]  [M]y Doctor and both assistance [sic] are out of the office today.  As soon as I hear from the Doctor tomorrow[,] I will let you know if he is allowing me back with no restrictions.
>
> FYI.  No where [sic] in the last document dated 1-17-2017 does it have a date.  It says 4 weeks which is the end of day tomorrow.  Nor does his statement indicate I will be back without restrictions.

72.    Ms. Keith responded stating:

> I have spoken with HR and they said the letter is dated January 17[th], therefore tomorrow would be four weeks.  The letter states the limited duty is only for four weeks.

73.     Plaintiff replied stating:

> I will contact you tomorrow and let you know what the Doctor will allow me to do.

74.     The following day, Tuesday, February 14, 2017, Ms. Keith sent Plaintiff an email stating:

> Your doctor's note stated 4 weeks starting Tuesday, January 17th.
>
> Tues Jan 17-Mon Jan 23 = 1 week
> Tues Jan 24-Mon Jan 30 = 2 weeks
> Tues Jan 31-Mon Feb 6 = 3 weeks
> Tues Feb 7-Mon Feb 13 = 4 weeks
>
> You have not provided a new doctor['s] note, so you are due back in the office full time starting today, Tuesday, February 14th. The expectation is that you will be back full time today. If you choose not to, you may be subject to disciplinary action.

75.     That same day, February 14, 2017, Plaintiff saw her physician and obtained a copy of a note dated February 10, 2017, which was reportedly sent to WGC News, the Navajo-Hopi Observer, WNI, and WGC Newspapers on February 10, 2017. The February 10, 2017 doctor's note states, in pertinent part, as follows:

> **Work Status:**
> Regular Job with Temporary Limitations: No lifting >20 lbs, no prolonged driving >45 min, 6 hr work days, Monday, Wed. and Friday.
>
> **Next Scheduled Appointment:** 03/20/2017

76.     Following her doctor's appointment, Plaintiff emailed a copy of the February 10, 2017 doctor's note to Ms. Keith. In her email, Plaintiff wrote:

> Attached you will find the updated Doctor Work Status report dated 2-10-2017. After my therapy appointments this afternoon[,] I went directly to the doctor['s] office[.]  [T]hey advised me that they had faxed this to the Williams News on Friday 2-10-2017. The work status has not changed from the one dated 1/17/2017.
>
> The doctors office advised me that if you have any further questions about this report you may call them directly and speak with Tina, which is Dr. Mahoney's surgical assistant.
>
> I will be in the office at 9:00 am tomorrow.

77.     Ms. Keith replied to Plaintiff's email threatening Plaintiff's employment. Ms. Keith's email stated:

> Tomorrow morning when you come in[,] please hand your doctor's note to Merilyn and she will send [it] to corporate HR and we will decide how to proceed with your employment.

78.     Additionally, on February 14, 2017, Plaintiff's physical therapist sent a letter to her doctor, stating in pertinent part:

> Ms. Croteau is under my care following lumbar fusion surgery performed October 17, 2016. Her work restrictions up until today were 16 hours of work per week, lifting limit of 20 pounds, and a driving limit of 45 minutes, which she is currently just able to manage without marked exacerbation of her post-operative pain.
>
> In my opinion, increasing hours to more than 25 hours per week, lifting more than 25 pounds, or driving more than 45 minutes would almost certainly result in significant worsening of Ms. Croteau's pain and would significantly slow her post-operative recovery.

Plaintiff gave a copy of this letter to Ms. Keith upon her return to work the following day, February 15, 2017.

79.     On February 24, 2017, Ms. Keith and Blake DeWitt, Vice President of Sales, terminated Plaintiff's employment while she was still recuperating and on job-protected (intermittent) FMLA leave, ostensibly because WGC News, the Navajo-Hopi Observer, WNI, and WGC Newspapers needed someone to be available full-time and Plaintiff could not provide it with full-time employment.

80.     Following the termination of her employment, Plaintiff was asked to sign a Benefit Action Form, Personnel Action Form, and Disciplinary Action Form. The Disciplinary Action Form states in pertinent part:

> On 2/6/17, you refused to sign your position description as well as your commission settlement agreement.
>
> The position of Account Executive requires you to be here full time and able to visit clients within the assigned territory. **Your excessive absences over the past few months have shown your inability to perform the duties of the position and created a hardship for the company.**
>
> SUMMARY AND ACTION TAKEN:  As stated in the "Western Newspapers, Inc. Round-Up of Personnel, Policies, Procedures, Rules" dated February 1, 1999 on page 25 and 26, under <u>Actions that Could Result</u>

in Discharge, #7 "Insubordination…", #8 "Failure to perform job satisfactorily…" and #9 "Excessive or unexcused tardiness or absenteeism…".  Therefore, your employment with Western News&Info, Inc. is terminated immediately.

(Emphasis added in bold.)

81.     Other employees who had not taken FMLA leave and/or were not disabled or regarded as disabled were not similarly treated.

82.     WGC News, the Navajo-Hopi Observer, WNI, and WGC Newspapers subjected Plaintiff to disparate treatment in the terms and conditions, rights, privileges, and benefits of employment, treated her differently than other employees who had not taken FMLA leave and/or were not disabled or regarded as disabled, failed to engage in an interactive process to identify a reasonable accommodation, failed to provide a reasonable accommodation, and terminated her.

83.     On February 9, 2018, Plaintiff filed a written charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination.

84.     Defendant's acts towards Plaintiff in violation of the statutes were knowing and intentional.

85.     Plaintiff was treated differently and less favorably than others who had not taken FMLA leave and/or were not disabled or regarded as disabled in that she was terminated.

86.     Plaintiff has been deprived of equal employment opportunities, and has otherwise been subjected to intentional discrimination because of her disability status, which has adversely affected her professional status, and has caused Plaintiff to suffer economic losses (including lost wages and benefits, as well as future pecuniary losses, interest, and reasonable attorneys' fees), emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses and damages, in violation of the FMLA and the ADA.

/ / /

## COUNT I

### (Violation of the Family and Medical Leave Act)

87.     All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

88.     The Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, allows an eligible employee to take up to twelve weeks of unpaid leave in any 12 month period for various purposes, including a serious medical condition that makes the employee unable to perform one or more of the essential functions of his or her job.

89.     Plaintiff was an eligible employee and Defendants WGC News, the Navajo-Hopi Observer, WNI, and WGC Newspapers were covered employers under the FMLA.

90.     Plaintiff suffered from a serious medical condition as defined in the FMLA.

91.     Plaintiff announced the need to take qualified FMLA leave from her job with WGC News, the Navajo-Hopi Observer, WNI, and WGC Newspapers because of her serious medical condition.

92.     Plaintiff was not designated by WGC News, the Navajo-Hopi Observer, WNI, and WGC Newspapers as a "key employee" under the FMLA.

93.     Plaintiff was terminated in whole or in part because she availed herself of qualified FMLA leave.

94.     WGC News, the Navajo-Hopi Observer, WNI, and WGC Newspapers violated the FMLA by interfering with Plaintiff's FMLA rights by (1) using one week increments to account for Plaintiff's FMLA leave instead of using one-half (1/2) week increments from December 5, 2016 to January 17, 2017 and one hour increments from January 17, 2017 to February 24, 2017; (2) Ms. Keith emailing Plaintiff on February 14, 2017 stating that she should give her doctor's note to Merilyn to send to corporate HR and "we will decide how to proceed with your employment"; and (3) Ms. Keith and Mr. DeWitt terminating Plaintiff's employment while she was still on a medical leave of absence protected by the FMLA due to "… excessive absences over the past few months have shown your inability to perform the duties of the position …."

95.     As provided for under the FMLA, Plaintiff is entitled to collect liquidated damages equal to the sum of her lost compensation, wages, and benefits.

96.     As a result of WGC News, the Navajo-Hopi Observer, WNI, and WGC Newspapers' violations of the FMLA, Plaintiff is entitled to collect wages, employment and pension benefits denied or lost, interest on this amount, liquidated damages equal to the lost compensation, wages, and benefits, including her back pay damages, compensatory damages, and her reasonable attorneys' fees and costs.  Plaintiff is also entitled to reinstatement or in lieu thereof front pay and other appropriate equitable relief, as well as all other remedies available under 29 U.S.C. § 2601, *et seq*.

WHEREFORE, Plaintiff requests that this court enter judgment in her favor and against the Defendants as follows:

A.     Declare that the employment practices complained of in this Complaint are unlawful and that they violate 29 U.S.C. § 2601, *et seq.* (the FMLA);

B.     Order Defendants to make Plaintiff whole, pursuant to 29 U.S.C. § 2601, *et seq*., by reinstating her with full back pay, bridged seniority, and reimbursement for all loss of pension, retirement, insurance, Social Security and other monetary and non-monetary benefits, or, alternatively deny reinstatement because of workplace hostility and other aggravating circumstances and order Defendants to pay Plaintiff's back and front pay and reimbursement for all loss of pension, retirement, insurance, Social Security, and other monetary and non-monetary benefits, all amounts to be proven at trial;

C.     Order Defendants to pay Plaintiff's actual damages in an amount to be proven at trial for all of her claims;

D.     Order Defendants to pay Plaintiff's general and compensatory damages for her economic losses, pain and suffering, emotional distress, harm to reputation and loss of earning capacity, and all special damages or financial losses that Plaintiff has suffered in an amount to be proven at trial;

E.  Order Defendants to pay Plaintiff for loss of fringe benefits in an amount that will be proven at trial;

F.  For additional damages to compensate for the taxation of Plaintiff's economic damages;

G.  For all relief available under the FMLA;

H.  For liquidated damages on Plaintiff's FMLA claims;

I.  Award Plaintiff prejudgment interest from the date each claim for damages was liquidated;

J.  Award Plaintiff prejudgment interest on all liquidated sums and interest on all sums awarded in judgment at the highest legal rate allowable from the date of judgment until paid;

K.  Award Plaintiff interest on all sums awarded in judgment at the highest legal rate allowable from the date of judgment until paid;

L.  Order Defendants to pay Plaintiff's court costs, expenses, and reasonable attorneys' fees in connection with this action, as provided in 29 U.S.C. § 2601, *et seq.* and any other applicable statute;

M.  Order Defendants to pay Plaintiff compensatory damages and punitive damages sufficient to punish Defendants for their malicious actions and to deter such conduct in the future;

N.  For Plaintiff's continuing costs in this matter;

O.  Retain jurisdiction over this action to ensure full compliance with the Court's orders and require Defendants to file such reports as the Court deems necessary to evaluate such compliance; and

P.  For such other and further relief as this court deems just and proper under the circumstances.

/ / /

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial.

**DATED** this 20th day of February, 2019.

**JACKSON WHITE**

/s Nathaniel J. Hill
By:    Nathaniel J. Hill, SBN 028151
40 North Center Street, Suite 200
Mesa, Arizona   85201
*Attorneys for Plaintiff*

F:\ABC\Croteau, Diana\Pleadings\Complaint.docx